UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| STEVE BODNAR, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CAUSE NO. 3:05-CV-510 TLS |
| ) | |
| JOHN R. VANNATTA, ) | |
| ) | |
| Respondent. ) | |

**OPINION AND ORDER**

Petitioner Steve Bodnar, a prisoner confined at the Miami Correctional Facility, submitted a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, dealing with loss of earned credit time in a prison disciplinary hearing. On November 24, 2004, Counselor Ray Peterson prepared a conduct report charging Mr. Bodnar with use or possession of a cigarette. On November 28, 2004, an official screened the conduct report and gave Mr. Bodnar a copy of the report. The hearing was originally scheduled for December 1, 2004, but was postponed until December 15, 2004, when a disciplinary board found him guilty, sanctioned him with a loss of sixty days of earned credit time, and demoted him from Credit Class I to Credit Class II. Mr. Bodnar unsuccessfully appealed to the facility superintendent and the final reviewing authority.

Where prisoners lose good time credits at prison disciplinary hearings, the Fourteenth Amendment's Due Process Clause guarantees them certain procedural protections, including (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision maker; (3) opportunity to call witnesses and present documentary evidence in defense when consistent with institutional safety and correctional goals; and (4) a written statement by the fact finder of evidence relied on and the reasons for the disciplinary action, *Wolff v. McDonnell*, 418 U.S. 539 (1974), and "some evidence" to support the decision of the prison disciplinary board." *Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 455 (1985).

In ground one of his petition for writ of habeas corpus, Mr. Bodnar alleges that "(t)here were MANY procedural and due process errors on this case/conduct report." (Pet. p. 3). In grounds two through six of his petition, he details the due process errors he believes require the finding of guilt be set aside.

Mr. Bodnar claims that the disciplinary board violated departmental policy in several of these grounds. But allegations that prison officials violated departmental policy when depriving prisoners of earned credit time are not cognizable in § 2254 actions. Relief in this action is only available from violation of the federal Constitution or laws. *Estelle v. McGuire*, 502 U.S. 62 (1991). State law questions do not state a claim for habeas relief. *Kraushaar v. Flanigan,* 45 F.3d. 1040 (7th Cir. 1995); *Hester v. McBride*, 966 F. Supp. 765 (N.D. Ind. 1997).

The respondent presents arguments on the merits of each of Mr. Bodnar's claims, and in the alternative asserts that he did not exhaust his state remedies as to some claims because he did not include them in his administrative appeal, citing *Eads v. Hanks* 280 F.3d 728, 729 (7th Cir. 2002). The respondent's exhaustion argument may be meritorious, but in any event, none of the grounds presented in the petition entitle Mr. Bodnar to habeas relief on the merits.

In ground two of his petition, Mr. Bodnar asserts that he was denied representation by a lay advocate in violation of Indiana Department of Correction ("IDOC") policies and regulations. The respondent asserts that Mr. Bodnar actually had a lay advocate, but the portions of the record he cites do not confirm that. All the documents are signed by Mr. Bodnar, rather than by a lay advocate. Respondent's exhibit K does refer to a Michael Keeling, but he appears to have been a witness rather than a lay-advocate.

The Constitution does not entitle a prisoner to a lay advocate unless he is illiterate or the case is so complex that it is unlikely that he will be able to collect and present the evidence necessary for an adequate comprehension of the case. *Wolff v. McDonnell,* 418 U.S. at 570; *Miller v. Duckworth*. 963 F.2nd 1002, 1004 (7th Cir. 1992). Mr. Bodnar does not allege, and the record does not suggest,

that he is illiterate or that the charges against him were complex. Accordingly, even if he did not have a lay-advocate, he states no claim upon which relief can be granted.

In ground three of his petition, Mr. Bodnar asserts that he "was not given or shown any findings or evidence against me." (Pet. p. 5). *Wolff* provides that prisoners are entitled to a written statement by the fact finder of evidence relied on and the reasons for the disciplinary action. The respondent states that a copy of the disciplinary hearing report, which contains this information, was given to Mr. Bodnar at the end of the hearing. The record of the proceedings submitted by the respondent confirms this because the copy of the disciplinary hearing report bears Mr. Bodnar's signature.

In ground four of his petition, Mr. Bodnar alleges that he was not given twenty-four hours notice of the charges against him and that he did not receive notice of all of the postponements of the hearing. He asserts that as a result, he didn't have time to prepare for the hearing and gather his evidence.

*Wolff v. McDonnell* guarantees prisoners advance written notice of the charges against them. But the record of the disciplinary hearing submitted by the respondents shows that he was notified of the charges against him when he was screened. The copy of the notice of disciplinary hearing (screening report) dated November 28, 2004, contains Mr. Bodnar's signature. It may be that Mr. Bodnar did not receive notification of all of the continuances, but any lack of notification of continuances did not harm him. If Mr. Bodnar missed the hearing because of lack of notification that might well state a valid claim. But Mr. Bodnar appeared at the hearing, and the fact that the hearing first scheduled for December 1 was not held until December 15 meant that he had an additional two weeks to gather evidence and prepare for the hearing.

Mr. Bodnar suggests that the continuances pushed the hearing date past the time limits established by IDOC policy. But *Wolff v. McDonnell* does not require that charges against an inmate be resolved within an given time frame, and violations of departmental policy are not cognizable in

3

§ 2254 actions.

In ground five of his petition, Mr. Bodnar alleges that the disciplinary committee denied him due process when they called the author of the conduct report and questioned him about his written conduct report. *Wolff v. McDonnell* provides that prisoners have the opportunity to call witnesses and present documentary evidence in defense. But the Constitution does not guarantee that witnesses can not be called to testify in person against an accused prisoner. That the disciplinary board may have elicited testimony from the author of the conduct report did not deprive Mr. Bodnar of due process.

Finally, in ground six of his petition, Mr. Bodnar asserts that he wasn't given a fair trial in front of impartial decision makers. The gist of Mr. Bodnar's argument is that the disciplinary board members were "'NOT' part of any kind of Disciplinary Hearing Body and were NOT familiar with the Policies, Procedures, and Regulations" governing disciplinary hearings.  (Pet. p. 7).

Due process requires that decision-makers in prison disciplinary proceedings be impartial and have no direct personal involvement in the incident that forms the subject of the hearing. *Wolff v. McDonnell*, 418 U.S. at 592; *Redding v. Fairman*, 717 F.2d 1105, 1113 (7th Cir. 1983), *cert. denied*, 465 U.S. 1025 (1984). But *Wolff* does not guarantee that a prisoner will have skilled and knowledgeable hearing officers familiar with every nuance of departmental policies. What *Wolff* does guarantee is that the author of the conduct report or someone involved in investigating the incident does not serve on the hearing board. *Redding v. Fairman*, 717 F.2d at 1113. ("Officials who have a direct personal or otherwise substantial involvement in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary board).

In this case, the respondent's submissions establish that the regular chairman of the disciplinary hearing board, Ray Peterson, was the author of the conduct report against Mr. Bodnar. Had Mr. Peterson presided over the hearing after writing the conduct report, it would have been a *Wolff* violation; that he stepped aside and let another chair the disciplinary committee means that

Mr. Bodnar's due process rights were not violated even if his replacement was less familiar with IDOC policies, procedures, and regulations than Mr. Peterson.

    For the foregoing reasons, the court the court DENIES this petition.

    SO ORDERED on March 21, 2006.

                                             /s/ Theresa L. Springmann
                                            THERESA L. SPRINGMANN
                                            UNITED STATES DISTRICT COURT